IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARY HITNER, | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| HAROLD M. HALLMAN, III, et al., | : | No. 07-596 |
|     Defendants. | : | |

<u>MEMORANDUM AND ORDER</u>

Schiller, J.                                                                                                             February 29, 2008

Plaintiff Mary Hitner brings this action under 42 U.S.C. § 1983 against Defendants Harold Hallman, III, William Cracas, Linda Glaum and West Pikeland Township. Plaintiff asserts that she was terminated from her position as part-time Township Treasurer in retaliation for complaining about what she perceived to be Defendants' failure to comply with generally accepted accounting measures in connection with Township business. Currently before the Court is Defendants' motion for summary judgment as to Plaintiff's First Amendment claim.[1] For the reasons discussed below, Defendants' motion is granted.[2]

I.     BACKGROUND

The parties agree on the following facts. (*See* Pl.'s Resp. to Defs.' Brief Sur Defs.' Mot. for Summ. J. [hereinafter "Pl.'s Resp."] at 5 (Plaintiff "does not dispute Defendants' factual

---

[1] In a July 25, 2007 Memorandum and Order, the Court dismissed all of Plaintiff's claims except for her First Amendment retaliation claim. Thereafter, the parties stipulated to dismissal of Plaintiff's claims against Norman Long, the Township Manager.

[2] It appears that Plaintiff's counsel has not heeded this Court's admonition to proofread and edit his work. (*See* July 25, 2007 Order at 1 n.1.) In his submission, Plaintiff's counsel describes the legal standards for excessive force and qualified immunity, neither of which are relevant to Plaintiff's First Amendment claim.

assertions.").)[3]

### A. Plaintiff's employment as part-time Township Treasurer

Defendant West Pikeland Township, a township of the Second class, is governed by a three-member Board of Supervisors (the "Board") pursuant to the Second Class Township Code, 53 PA. CONST. STAT. ANN. § 65101. (Defs.' Mot. for Summ. J. [hereinafter "Defs.' Mot."] Ex. C (Am. Compl.) ¶ 6.) Defendants Hallman, Cracas, and Glaum served as elected members of the Board at all times relevant to Plaintiff's claims. (*Id.* ¶¶ 2-5.) Plaintiff was appointed part-time Township Treasurer on April 1, 2002. (*Id.* Ex. B (4/1/02 Meeting Minutes).) Plaintiff's duties included handling cash receipts and disbursements, keeping track of Township accounts and reports, providing analyses and recommendations concerning the Township's financial position, and ensuring compliance with the annual budget. (*Id.* Ex. A (Hitner Dep.) at 9 & Ex. D (Job Description).)

### B. Plaintiff's grievances regarding Defendants' accounting practices

Plaintiff's First Amendment retaliation claim is based on her concerns and, in some cases, complaints regarding: (1) the purchase of certain Township equipment in fall 2003; (2) the Township's acquisition of a backhoe and trackless vehicle; (3) a reimbursement request relating to Defendant Hallman's attendance at a state convention; and (4) certain payments related to snow removal.

First, Plaintiff claims that in October 2003, she became aware that certain Township officials, including Hallman, were placing bids for the purchase of trucks without first discussing those purchases at Township meetings and without regard for the budget. (Defs.' Mot. Ex. A at 15-16, 20-21, 27.) Plaintiff never approached Hallman or the Township Manager at the time, Norman Long,

---

[3] Notably, Plaintiff has failed to produce even one exhibit in support of her response.

to discuss her concerns. (*Id.* at 25-26.) Although Plaintiff believes she spoke with Defendant Glaum about the matter, she testified that she was not sure and "[couldn't] swear to it." (*Id.* at 26-27.) Plaintiff mentioned her concerns to co-workers and an elected Township Auditor, however, but the Township Auditor did not confirm Plaintiff's belief as to Defendants' improprieties. (*Id.* at 58; Pl.'s Resp. at 8.) Moreover, Plaintiff admitted at her deposition that she was not sure whether the vehicles on which Hallman bid were ultimately purchased by the Township. (Defs.'s Mot. Ex. A at 23.)

    Second, Plaintiff had concerns regarding the Board's purchase of two pieces of construction equipment — a backhoe and a trackless vehicle. (*Id.* at 31, 33-34.) After the Township acquired the backhoe on a lease purchase, Plaintiff accounted for the lease as a debt, which consequently placed the Township in debt. (*Id.* at 33-34.) Plaintiff discussed this concern with Long and Cracas; they disagreed, however, with her decision to characterize the lease as a debt. (*Id.* at 34-35, 40, 44.) In this instance, Cracas yelled at Plaintiff because he was upset with her handling of the issue. (*Id.* at 43-44.) The Township subsequently decided to purchase the trackless vehicle outright as opposed to the lease purchase arrangement. (*Id.* at 45-46.) Plaintiff believed this was inappropriate because Township representatives previously stated at a meeting that the vehicle would be leased, however, she never complained to anyone about her concerns in this regard. (*Id.*)

    Third, Plaintiff had concerns about a request for reimbursement pertaining to Hallman's attendance at a state convention in April 2004. (*Id.* at 47-48.) At the time of the convention, Hallman worked part-time as the Township's road master in addition to his elected position as Township Supervisor. (*Id.* at 50.) Long and Cracas sought to reimburse Hallman for wages lost in connection with his road master position as a result of Hallman's attendance at the convention in his elected capacity; Plaintiff does not know whether Hallman himself sought reimbursement. (*Id.* at

3

51-52, 69-70.) Generally, an elected official is entitled to be reimbursed for time missed from work to attend a state convention. (*Id.* at 50-51; *see also* 53 PA. CONST. STAT. ANN. § 66402(g).) Plaintiff objected to this particular request, however, based on her belief that Hallman "didn't lose any hours" "because whatever hours he needed to work, he would work when he came back [from the convention]." (Defs.' Mot. Ex. A at 51-52.) Plaintiff refused to enter the reimbursement request into payroll, but she was neither reprimanded nor disciplined in connection with this incident. (*Id.* at 48, 55-56.) Plaintiff claims to have raised her concerns with Glaum, but does not know whether Hallman was aware of her concern. (*Id.* at 55.) Furthermore, Plaintiff contacted the Pennsylvania Ethics Commission, however, she was told not to file a complaint since she had the ability to stop any improper reimbursements. (*Id*. at 70-71, 86.) Plaintiff does not know whether any supervisors were aware of this fact prior to her termination, but thinks that she "may have" told Glaum. (*Id.* at 77.)

Plaintiff's fourth concern pertains to certain payments made in the wake of a January 2005 snowstorm. Plaintiff believed that a payment made to a contractor for "standby" time during the snowstorm was inappropriate. (*Id.* at 61, 63-64.) She did not, however, complain about this to anyone. (*Id.* at 63.) Furthermore, Plaintiff noticed discrepancies between employees' time sheets for duties related to the snowstorm and time sheets submitted by the Township Manager. (*Id.* at 61.) Plaintiff refused to issue payments on the allegedly inaccurate time sheets despite Long's directive, and raised her concerns with Long.[4] (*Id.* at 69.)

---

[4] Plaintiff originally alleged that she was also retaliated against for a complaint that she filed with the Pennsylvania Ethics Commission against Hallman based on grounds that he improperly voted in favor of Township purchases of certain products from his father's store. (*Id.* at 86, 101, 103.) In her response to Defendants' motion, however, Plaintiff notes that she "believed that she filed the complaint prior to her termination and stands corrected at this time."

4

Plaintiff admits that all of her complaints "were made pursuant to her duties as Township Treasurer." (Pl.'s Resp. at 10; Defs.' Mot. Ex. A at 25, 34, 76, 101.)

### C. Plaintiff's termination

Plaintiff was terminated on February 14, 2005. (Defs.' Mot. Ex. A. at 26.) According to Plaintiff, Cracas informed her that the Board was eliminating her position because it was too expensive, and that the Township planned to outsource the position instead. (*Id.* at 88.) Plaintiff believes, however, that she was terminated for "refusing to perform her duties improperly" and "in direct retaliation to [sic] Plaintiff being outspoken regarding improper and inconsistent accounting procedures which were part of the custom and practice of the Defendants." (Defs.' Mot. Ex. C ¶¶ 33-34.)

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the admissible evidence fails to demonstrate a dispute of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). When the moving party does not bear the burden of persuasion at trial, it may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thereafter, the nonmoving party demonstrates a genuine issue of material fact if sufficient evidence is provided to allow a reasonable finder of fact to find for the nonmoving party at trial. *Anderson*, 477 U.S. at 248. In reviewing the record, "a court must view the facts in the light most favorable to the nonmoving party and draw all

---

(Pl.'s Resp. at 10.)

inferences in that party's favor." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994). Furthermore, a court may not make credibility determinations or weigh the evidence in making its determination. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S.133,150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).

**III.   DISCUSSION**

"To state a First Amendment retaliation claim, a plaintiff must allege two things: (1) that the activity in question is protected by the First Amendment, and (2) that the protected activity was a substantial factor in the alleged retaliatory action." *Hill v. Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006). "A public employee's statement is a protected activity when (1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have 'an adequate justification for treating the employee differently from any other member of the general public' as a result of the statement he [or she] made." *Id.* at 241-42 (*quoting Garcetti v. Ceballos*, 126 S. Ct. 1951, 1958 (2006)). When public employees make statements pursuant to their official duties, they are not speaking as "citizens" for First Amendment purposes. *Id.* at 242.

Plaintiff asserts that Defendants violated her First Amendment rights by terminating her in response to her complaints and objections regarding their failure to use generally accepted accounting procedures in connection with Township business. She has admitted, and the agreed upon facts make clear, however, that all of these complaints and objections were made pursuant to her duties as part-time Township Treasurer. Thus, her speech is not protected under the First Amendment as a matter of law. Consequently, even assuming that Defendants knew of Plaintiff's

statements and terminated Plaintiff based on those statements, summary judgment is warranted because Plaintiff cannot show that she was acting outside her official duties or speaking as a citizen. *See Garcetti*, 126 S. Ct. at 1961; *DeCarmine-Bender v. Achievement House Charter Sch.*, Civ. A. No. 06-4610, 2008 WL 378589 (E.D. Pa. Feb. 11, 2008).

## IV.     CONCLUSION

Based on the above, Defendants motion is granted.  An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARY HITNER,** | : | |
| **Plaintiff,** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **HAROLD M. HALLMAN, III, et al.,** | : | **No. 07-596** |
| **Defendants.** | : | |

## ORDER

**AND NOW**, this **29th** day of **February, 2008**, upon consideration of Defendants' Motion for Summary Judgment, Plaintiff's Response thereto and for the foregoing reasons, it is hereby **ORDERED** that Defendants' motion (Document No. 22) is **GRANTED**. The Clerk of Court is directed to close this case.

BY THE COURT:

**Berle M. Schiller, J.**